UNITED STATES of America

v.

Earl SIMMONS.

Crim. No. 74–268.

United States District Court,
W. D. Pennsylvania.

Sept. 15, 1977.

Blair A. Griffith, U. S. Atty., Pittsburgh, Pa., for plaintiff.

Earl Simmons, pro se.

## MEMORANDUM OPINION

ROSENBERG, District Judge.

This matter is before me on the motion of Earl Simmons, pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct the sentence imposed on him by Judge Ralph F. Scalera on January 16, 1975. Simmons was tried and found guilty by a jury on two counts of armed robbery of the Parkvale Savings and Loan Association, Pittsburgh, Pennsylvania in violation of 18 U.S.C. § 2113(a) and (d) and was sentenced to concurrent terms of 25 years imprisonment. The Third Circuit Court of Appeals affirmed the conviction and sentence in *United States v. Simmons*, 517 F.2d 1400, C.A. 3, 1975, cert. den. 423 U.S. 931, 96 S.Ct. 283, 46 L.Ed.2d 260 (1975).

Simmons, presently serving his sentence, moves to vacate, set aside or correct his sentence based on the grounds that the United States violated the Interstate Agreement on Detainers, Article IV(e), 18 U.S.C. App. (Agreement) by taking him from and returning him to the Allegheny County Jail on several occasions during his federal proceeding without trying him.

Article IV(e) states that

"If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Simmons contends that he was arrested for robbing the Parkvale Savings and Loan by Pittsburgh City Detectives and was held in Allegheny County Jail, subsequent to being held for court by a state magistrate on August 7, 1974, awaiting trial. On August 22, 1974 a federal grand jury indicted Simmons for the same criminal act and on

August 29, 1974, the United States lodged a detainer against him at the Allegheny County Jail. Simmons claims that he was brought to the federal courthouse four times by way of *writs of habeas corpus ad prosequendum* before finally being tried and at all times was returned to state custody. These facts are not refuted by the Government.

In *United States v. Sorrell*, 562 F.2d 227, C.A. 3, 1977, the court held that even if a prisoner is in state custody and is brought into federal custody by a writ of habeas corpus ad prosequendum, it is the same as if a detainer were lodged and failure to try that prisoner on the federal charge and retain custody would under certain circumstances require a dismissal of the federal indictment as such actions being contrary to the Agreement.

The Court also stated the legislative purpose of the Agreement as that:

"The basic statutory framework of the Detainer Agreement has been summarized in *United States ex rel. Esola v. Groomes*, 520 F.2d 830, 833–34 (3d Cir. 1975), and need not be described here. *See also United States v. Ford*, 550 F.2d 732, 737–41 (2d Cir. 1977). However, the legislative purpose in adopting this statute is specifically set forth in Article I, which is designed '[t]o implement the right to a speedy trial and to minimize the interference with a prisoner's treatment and rehabilitation,' *Esola, supra* at 833, as follows:

'The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.

The party States also find that proceedings with reference to such charges and detainers, while emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.' " *United States v. Sorrell, supra,* at pages 229–230, Part II of 562 F.2d.

"As noted under part II above, by adopting the Detainer Agreement in 1970, Congress intended its provisions to apply whenever a detainer had been lodged with a state jurisdiction by the Federal Government. Also, we note that by returning Sorrell to Graterford Prison, his ability to consult with counsel was impeded, which had the potential concomitant effect of impairing his constitutional right to a speedy trial. Interference with the right to a speedy trial is inconsistent with the remedial purposes and plain statutory language of the Detainer Agreement." *United States v. Sorrell, supra,* at page 232, Part IV of 562 F.2d.

■ As this Circuit has mandated above, the Agreement does apply to situations where there has been a removal from state to federal custody. However, there are certain factors present that negate its application specifically to the actions of the record in this case.

■ First, it is important to note that since no federal penal institution exists in this area, the Allegheny County Jail as well as other local institutions has become the holding place for prisoners awaiting trial in federal court. Simmons was therefore already being confined there and he was only removed for court proceedings on specific days.

Second, Simmons was only in the Allegheny County Jail awaiting to be tried on state charges and not serving any sentence. He eventually was tried in federal court within 81 days from his indictment. The purpose of the Agreement was not thwarted by his removal to federal custody on those several occasions by writs because not serving a sentence there was no rehabilita-

tion process to upset nor was there any denial of a speedy trial. It is also important to note that Simmons could freely discuss this matter with counsel because at all times he remained at the Allegheny County Jail.

Finally, Simmons never objected before that his right to a speedy trial was violated. In the *Sorrell* case, *supra,* the court held:

"We cannot agree with Judge Garth's statement, 562 F.2d [232] at page 239 of his separate opinion that 'there are probably hundreds of federal prisoners, parolees, and probationers *who will be eligible to have their federal convictions vacated* under the majority's interpretation of the Agreement . . .' (Emphasis supplied) Since this issue involves statutory interpretation of Congressional wording designed to require speedy criminal trials, there seems little justification for retroactive application of the statutory construction ultimately adopted, through collateral attack, where the defendant-prisoner has not requested a speedy trial prior to the trial. See for example *Daniel v. Louisiana,* 420 U.S. 31, [95 S.Ct. 704, 42 L.Ed.2d 790] (1975); *U. S. ex rel. Cannon v. Johnson,* 536 F.2d 1013, 1015–16 (3d Cir. 1976).[6b]" *Sorrell, supra,* at page 231, Part III of 562 F.2d.

"[6b] Also under the principles governing retroactive applications applied in civil cases as set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, [92 S.Ct. 349, 30 L.Ed.2d 296] (1972), relied on in note 1 of Judge Garth's opinion, it would appear that this issue can well be considered as 'an issue of first impression whose resolution was not clearly foreshadowed' ". Footnote 6b, page 231, Part III, *Sorrell, supra.*

As for the movant's supplemental motion to vacate pursuant to 28 U.S.C. § 2255 in that a search warrant, issued by City Magistrate Stephen P. Laffey on July 31, 1944 to search the residence of 7417 Race Street, Pittsburgh, Pennsylvania, was issued illegally, it is unfounded and provides no basis for ruling that the subsequent search was invalid.

Accordingly, the motions to vacate, set aside or correct sentence by a person in federal custody will be denied.